# EXHIBIT C

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/11/2023 11:11 AM
By: Narzralli Baksh , Deputy

1  James H. Cordes (#175398)
   Angelica J. Caro (#318821)
2  James H. Cordes and Associates
   831 State Street, Suite 205
3  Santa Barbara, CA 93101
   Telephone: (805) 965-6800
4  Facsimile: (805) 965-5556

5  Attorney for Plaintiff
   GARY BAKER
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                     **COUNTY OF SANTA BARBARA**

10                    **ANACAPA DIVISION**          23CV05455

11  GARY BAKER, an individual,            )    **COMPLAINT FOR DAMAGES AND**
                                          )    **INJUNCTIVE RELIEF**
12                Plaintiffs,             )
                                          )    **1. Breach of Contract;**
13       vs.                              )
                                          )    **2. Breach of the Implied Covenant of**
14  CINAMAKER, INC., a corporation,       )    **Good Faith and Fair Dealing;**
    BENJAMIN NOWAK, an individual, and    )
15  DOES 1 through 10, inclusive,         )    **3. Misclassification as Independent**
                                          )    **Contractor**
16                Defendants.             )
                                          )    **4. Unpaid Contract Wages;**
17                                        )
                                          )    **5. Violation of <u>Labor Code</u> §226;**
18                                        )
                                          )    **6. Waiting Time Penalties;**
19                                        )
                                          )    **7. Expense Reimbursement;**
20                                        )
                                          )    **8. Unfair Business Practices; and,**
21                                        )
                                          )    **9. Defamation.**
22                                        )
                                          )    **<u>DEMAND FOR JURY TRIAL</u>**
23  _____)

24                        **<u>GENERAL ALLEGATIONS</u>**

25       1.      Plaintiff GARY BAKER ("Mr. Baker" or "Plaintiff") is an individual who, at all

26  times relevant herein, worked and resided in or around the City and County of Santa Barbara,

27  State of California.

28

                                         1
                    (Complaint for Damages and Injunctive Relief)

2.      Defendant CINAMAKER, INC. ("Cinamaker") is a corporation which, at all times relevant herein, had its principal place of business in and around the City of Atlanta, State of Georgia.

3.      Defendant BENJAMIN NOWAK ("Nowak") is an individual who, at all times relevant herein, worked and resided in and around the City of Atlanta, State of Georgia.

4.      Cinamaker, Nowak, and DOES 1 through 10 are collectively referred to as "Defendants."

5.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names. Plaintiff is informed and believes and based thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and caused injury and damage proximately thereby to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of the court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when the same have been finally ascertained.

6.      Whenever in this Complaint reference is made to "Defendants," such allegations shall be deemed to mean the acts of Defendants acting individually, jointly, and/or severally.

7.      Plaintiff is  informed and believes and based thereon alleges, that at all times mentioned herein, each of the Defendants was the alter ego, agent, servant, employee, co-venturer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned, acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

8.      Plaintiff is informed and believes and based thereon alleges that Defendant Nowak was a supervisory employee and managing agent of Defendant Cinamaker and DOES 1-10 at all times relevant.

9.      Plaintiff is further informed and believes and based thereon alleges that Defendant Nowak was an owner, director, officer, or managing agent of Defendant Cinamaker and DOES 1-10 throughout the course of Plaintiffs' employment. As a result thereof, Defendant Nowak is

2

(Complaint for Damages and Injunctive Relief)

1  individually liable to Plaintiffs for Defendants' violations of the California Labor Code and

2  Wage Order No. 4 under <u>Labor Code</u> §§ 1197.1 and 558.1.

3     10.    On May 29, 2020, the California Judicial Council approved a revision to

4  Emergency Rule 9 regarding the statutes of limitations for filing civil cases during the

5  COVID-19 pandemic. The amended Emergency Rule 9 is no longer tied to the statewide state of

6  emergency declaration. The new rule tolls statutes of limitations and repose for civil causes of

7  action as follows: (a) statutes of limitations and repose for civil causes of action that exceed 180

8  days are tolled from April 6, 2020 until October 1, 2020; and (b) statutes of limitations and

9  repose for civil causes of action that are 180 days or less are tolled from April 6, 2020 until

10 August 3, 2020.

11                           **Factual Background**

12    11.    Cinamaker hired Mr. Baker under a written Offer Memorandum dated September

13 1, 2017 ("Agreement") as Senior Vice President of Corporate Development at a salary of

14 $200,000 per year, or $16,667 per month. Most recently, Cinamaker referred to Mr. Baker as its

15 President and Chief Operating Officer.  The written Agreement provided, *inter alia*, that

16 compensation would be partially remitted as "net cash compensation (after tax withholding)" of

17 $3,500 every two weeks and the balance would accrue as either stock, warrants, options, cash, or

18 another instrument; that records of accrued value will be maintained by Cinamaker and reported

19 to Gary Baker on a monthly basis; and that Cinamaker would be responsible for paying the tax

20 withholding obligation. A true and correct copy of the Agreement is attached as Exhibit A and

21 incorporated herein by this reference.[1]

22    12.    Mr. Baker worked exclusively and full-time as President and COO of Cinamaker

23 for the benefit of Cinamaker. As the Agreement notes,

24        "We're delighted to extend this offer of ***employment*** for the position of
         Senior Vice President of Corporate Development with Cinamaker Inc.. Should

25       you accept this offer, your start date will be 9/1/2017 for a minimum period of one
         year. You will report to the Company's CEO, Benjamin Nowak. Please review

26       this summary of terms and conditions for your anticipated ***employment*** with us."
         (Emphasis added.)

27

28 _____

   [1]      At the time Mr. Baker signed the Agreement, it did not contain the handwriting in
   the upper left and along the left side.

                                     3

                    (Complaint for Damages and Injunctive Relief)

> "Your title will be Senior Vice President of Corporate Development. This is a full-time position while you are employed at the company. Outside of your previous mentoring obligations with the Impact Hub, Santa Barbara, you will not engage in other employment or contract work unless agreed upon by Cinamaker and Gary Baker."

13.     Mr. Baker fulfilled multiple roles and needs of the company, including but not limited to Corporate Development, Business Development, Customer Support, Marketing, Communications/PR, Content Development, Video Production, Events Planning & Support, Sales, President & COO. Mr. Baker dedicated his time, from September 1, 2017 to August 27, 2023, averaging 50 to 60 hours per week (and accessible 24/7) responding to support queries, internal requests, frequently cancelling travel and personal time to support the needs of Cinamaker.

14.     A few months after the start of Mr. Baker's employment and at his request, Cinamaker increased the amount of Mr. Baker's "net cash compensation" to $7,500 per month.

15.     On or about March 1, 2018, Cinamaker offered Mr. Baker ten percent of Cinamaker's stock which would be earned over a three year period via email from Nowak which stated:

> "May I present you with your golden handcuffs. [¶] Let this be email be official notification that as we are presently organizing our corporate structure that Cinamaker, Inc. is offering you, as an incentive package, being a senior executive in the business, 10% of Cinamaker's stock to be earned out over a 3 year period beginning on March 1st, 2018. [¶] We will work with you, our contract CFO and CPA to determine the best structure and format to manage the grant. [¶] The basic terms of the stock arrangement are the following details are TBD."

16.     Nowak confirmed orally and in writing the plain language of his offer: that the ten percent was separate from and addition to any equity that was being earned and accrued in lieu of wages.

17.     In 2020, Mr. Baker filed his tax returns for the years 2018, 2019, and 2020 and received a tax bill for the unpaid taxes.

18.     In or around December, 2021, Cinamaker made a $30,000 payment toward Mr. Baker's outstanding tax bill. Shortly thereafter, Cinamaker began making monthly payments to Mr. Baker of $750 toward his outstanding tax bill.

4

19.     On or about May, 2022, Mr. Baker reviewed Cinamaker's proposed "Cap Table" and other documents and became aware that the handwritten portion of Exhibit A was added by Nowak without reviewing with Mr. Baker's input or agreement. Mr. Baker emailed Nowak for clarification about the status of his deferred compensation. Nowak never responded.

20.     In October, 2022, Mr. Baker submitted his 2021 tax bill.

21.     In November, 2022, Mr. Baker's "net cash compensation" was raised to $10,000 per month, and in July, 2023 Mr. Baker's "net cash compensation" was raised to $13,000 per month.

22.     On or about August 8, 2023, Nowak inquired with Mr. Baker about his outstanding tax bill. Mr. Baker responded he would submit his 2022 tax bill that weekend. In response, Nowak stated in sum or substance that Mr. Baker had the wrong impression of his salary and gave Mr. Baker an ultimatum to either (1) reduce his monthly earnings to $7,500 and have Cinamaker pay the outstanding taxes or (2) keep his monthly earnings at $13,000 per month and he pay his tax obligation himself, saying, "You need to think about this. If this is your requirement we can't go on."

23.     As of this time, the deferred compensation due through 2023 had accrued to approximately $698,993.33; the unpaid taxes on Mr. Baker's compensation from 2018-2020 and 2022 was approximately $19,355 and liable to accrue additional penalties and interest for remaining unpaid; and the current 2023 tax obligation was approximately of $12,620.18.

24.     Mr. Baker did not agree to any of these proposed changes to his Agreement.

25.     On or about August 14, 2023, and based on Nowak's comments from August 8, 2023,  that, "you need to think about this. If this is your requirement we can't go on," Mr. Baker told David Hirsch, the lead investor and majority owner of Cinamaker ("Mr. Hirsch"), of his intention to resign but to remain available through September 15, 2023 to assist with any transition. Mr. Hirsch asked him not to tell Nowak because he wanted to convey that information himself. Mr. Baker followed by immediately sending a resignation letter to Mr. Hirsch.

26.     On or about August 27, 2023, Mr. Baker sent the resignation letter to Nowak and again to Mr. Hirsch, to whom Mr. Baker had originally sent it on or about August 14, 2023. Mr.

Baker requested payment of his deferred salary, payment of outstanding taxes and 2023 estimated taxes, and the recording of his 10% Cinamaker stock. Mr. Baker also provided a summary of the outstanding balances.

27.     As of Mr. Baker's final date of employment, he had accrued approximately $2,033.67 in unreimbursed expenses. Despite Mr. Baker making a request for reimbursement, those expenses have not been reimbursed.

28.     On or about August 28, 2023, between 12:40 AM and 1:30 AM, Nowak defamed Mr. Baker in group Skype messages to members of the Cinamaker engineering, and marketing, and operations leadership, including but not limited to a message at 12:57 AM PST which included the following; "Gary no longer works here… Please remove any credentials. I would ask nobody engages…." Six minutes later, he followed up: "Please remove Gary the Thief." A true and correct copy of that message is attached as Exhibit B.

## FIRST CAUSE OF ACTION

### (*Breach of Contract Against Cinamaker and DOES 1-5*)

29.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporate the same by reference as though fully set forth herein.

30.     Plaintiffs fully performed all conditions, covenants, and promises to be performed by them under the Agreement.

31.     Defendants failed to make payments and perform their obligations to Plaintiff under the Agreement.

32.     Plaintiff has been damaged and continue to be damaged in an amount to be proven at trial as a result of Defendants' breaches as described above.

33.     As a result of Defendants' conduct in not paying Plaintiff the agreed-upon wages, Plaintiff has been deprived of his agreed-upon wages.

34.     As a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has sustained and will sustain damages in the amount his agreed-upon wages.

## SECOND CAUSE OF ACTION

### *(Breach of the Implied Covenant of Good Faith and*
### *Fair Dealing Against Cinamaker and DOES 1-5)*

35.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporate the same by reference as though fully set forth herein.

36.     At all times relevant to this action there existed with respect to the contract between the parties an implied covenant of good faith and fair dealing by which Defendants promised to give full cooperation to Plaintiff and Plaintiff's performance under said employment contract and to refrain from doing any act which would prevent or impede Plaintiff from performing all the conditions of the contract to be performed by him or any act that would interfere with Plaintiff's employment of the fruits of said contract. Specifically, said covenant of good faith and fair dealing required Defendants to fairly, honestly and reasonably perform the terms and conditions of the contract.

37.     Plaintiff has performed all acts, conditions, covenants, promises and other obligations required to be performed by them under the terms of the Agreement.

38.     By their unlawful actions and breach of the Agreement as set forth herein, Defendants breached their implied covenant of good faith and fair dealing owed to Plaintiff.

39.     As a direct and proximate result of said breach by Defendants, Plaintiff has sustained and will sustain damages in the amount his agreed-upon wages.

## THIRD CAUSE OF ACTION

### *(Misclassification as Independent Contractor Against Cinamaker and DOES 1-5)*

40.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporate the same by reference as though fully set forth herein.

41.     Labor Code §350, subdivisions (a) through (c), provides,

a.      "(a) 'Employer' means every person engaged in any business or enterprise in this state that has one or more persons in service under any appointment, contract of hire, or apprenticeship, express or implied, oral or written, irrespective of whether the person is the owner of the business or is operating on a concessionaire or other

7

basis.

b.   (b) 'Employee' means every person, including aliens and minors, rendering actual service in any business for an employer, whether gratuitously or for wages or pay, whether the wages or pay are measured by the standard of time, piece, task, commission, or other method of calculation, and whether the service is rendered on a commission, concessionaire, or other basis.

c.   (c) 'Employing' includes hiring, or in any way contracting for, the services of an employee."

42.   Labor Code §2750 provides in full, "The contract of employment is a contract by which one, who is called the employer, engages another, who is called the employee, to do something for the benefit of the employer or a third person."

43.   The definition of "employer" for purposes of California wage and hour laws is set forth in the Wage Orders promulgated by the Industrial Welfare Commission at Section 2 and reads in relevant part as follows: "'Employer' means any person ... who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

44.   At all times relevant herein, Plaintiff's wages and hours and working conditions were governed by, *inter alia*, Title 8, California Code of Regulations Section 11040, Industrial Welfare Commission Order No. 4 ("Wage Order 4").

45.   Labor Code §558.1, subd. (a), (b), and (c) provide:

"Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226. 7, 1193. 6, 1194, or 2802, may be held liable as the employer for such violation;

"For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

"Nothing in this section shall be construed to limit the definition of employer under existing law."

8

46.     <u>Labor Code</u> §268  makes it unlawful for any person or employer willfully to misclassify an individual as an independent contractor or to make any deductions from compensation, for any purpose, including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts would have violated the law if the individual had not been misclassified.

47.     During the time Plaintiff worked Defendants, Plaintiff was an employee of Defendants as defined by <u>Labor Code</u> §§ 350, subd. (b) and 2750. However, Defendants willfully misclassified Plaintiff as an independent contractor. By so doing, Defendants lowered their cost of doing business by means of, *inter alia*, the following:

a.     Defendants did not report or pay the employer's share of federal or state payroll taxes with respect to any of the funds paid to Plaintiff as required by federal and state law;

b.     Defendants did not provide or pay for Workers Compensation insurance for Plaintiff;

c.     Defendants did not provide or pay for State Disability insurance for Plaintiff; and,

d.     Defendants did not provide or pay for benefits to Plaintiff that other of Defendants' employees received.

48.     As a direct and proximate result of Defendants' conduct as alleged above, Plaintiff is entitled to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law.

49.     As a direct and proximate result of Defendants' pattern and practice as alleged above, Plaintiff is are entitled to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law.

/ / /

/ / /

/ / /

**FOURTH CAUSE OF ACTION**

*(Unpaid Contract Wages Against All Defendants)*

50.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporate the same by reference as though fully set forth herein.

51.     This action is brought by Plaintiff under <u>Labor Code</u> §204 which provides that wages earned must be paid at least twice per calendar month on regular paydays.

52.     <u>Labor Code</u> §212 provides, in pertinent part, that wages must be paid by an instrument that is negotiable and payable in cash, on demand, without discount, at some established place of business in the state, and that an employer may not pay wages via any scrip, coupon, cards, or other thing redeemable, in merchandise or purporting to be payable or redeemable otherwise than in money.

53.     <u>Labor Code</u> §219, subdivision (a)  provides, in pertinent part, that, "***no provision*** of this  article [ARTICLE 1. General Occupations [200 - 244]] ***can in any way be contravened or set aside by a private agreement***, whether written, oral, or implied." (Emphasis added.)

54.     Plaintiff performed work and earned wages but was not paid all wages earned at least twice per calendar month on regular paydays.

55.     As a result of Defendants' conduct in not paying Plaintiff his wages, Plaintiff  has been deprived of his wages for all hours worked.

56.     As a direct and proximate result of Defendant's conduct as alleged above, Plaintiff has sustained and will sustain damages in the amount his unpaid wages for all hours worked..

**FIFTH CAUSE OF ACTION**

*(Violation of <u>Labor Code</u> §226 Against All Defendants)*

57.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporate the same by reference as though fully set forth herein.

58.     This action is brought by Plaintiff under <u>Labor Code</u> §226, which sets forth reporting requirements for employers when paying wages, including,

(Complaint for Damages and Injunctive Relief)

"Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees . . . an itemized statement in writing showing (1) gross wages earned...."

Subdivision (e) provides,

"(1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

"(2)(A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement."

Subdivision (g) provides, "An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees."

59.     On the pay periods in which Defendants underpaid wages to Plaintiff, Defendants did not provide accurate corresponding wage statements.

60.     As a direct and proximate result of Defendants' conduct as alleged above, Plaintiff is entitled to a civil penalty of fifty dollars ($50) for the initial pay period, and one hundred dollars ($100) for each subsequent pay period, for which Defendants violated the reporting requirements of <u>Labor Code</u> §226, up to a maximum of $4,000, together with interest thereon and attorney's fees and costs.

## <u>SIXTH CAUSE OF ACTION</u>

### *(Waiting Time Penalties Against All Defendants)*

61.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporate the same by reference as though fully set forth herein.

62.     This action is brought under <u>Labor Code</u> §203, which, at all times relevant herein, provided that if an employer willfully fails to pay any wages of an employee who is discharged or quits, the wages of such employee shall continue as from the due date thereof at the same rate until paid or until an action therefor is commenced, for not more than 30 days.

63.     More than thirty days have past since Plaintiff was discharged or quit his employment with Defendants.

11

(Complaint for Damages and Injunctive Relief)

64.   As a result of Defendants' willful conduct in not paying the wages to which Plaintiff was were entitled, Plaintiff is are entitled to thirty days wages as penalty wages under Labor Code §203 together with interest thereon and attorney's fees and costs.

### SEVENTH CAUSE OF ACTION

### *(Expense Reimbursement under Labor Code §2802 against all Defendants)*

54.   Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporate the same by reference as though fully set forth herein.

55.   Plaintiff brings this action under Labor Code §2802, which provides employers shall indemnify their employees for all necessary expenditures or losses incurred by the employees in direct consequence of the discharge of their duties or of their obedience to the directions of the employer.

56.   Plaintiff was required by Defendants to expend monies in direct consequence of the discharge of his duties or of his obedience to the directions of the employer, most recently in an amount of $2,033.67.

57.   As a direct and proximate result of Defendants' conduct as alleged above, Plaintiff has sustained and will sustain damages in the amount of the monies incurred by him in direct consequence of the discharge of his duties or of his obedience to the directions of the employer as described above; namely, expenses most recently in an amount of $2,033.67.

### EIGHTH CAUSE OF ACTION

### *(Unfair Business Practices Against All Defendants)*

65.   Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates the same by reference as though fully set forth herein.

66.   Plaintiff  brings this action for himself and on behalf of the People of the State of California under the provisions of the Business & Professions Code §§17200 *et seq.* Among the persons adversely affected the unfair business practices of Defendants as alleged herein are all Defendants' employees who did not receive the agreed-upon wages to which they were entitled.

67.   Business & Professions Code §§17200 *et seq.* defines unfair competition to include any "unfair," "unlawful," or "deceptive" business practice. Business & Professions Code

(Complaint for Damages and Injunctive Relief)

§§17200 *et seq.* provides for injunctive and restitutionary relief for violations. Defendants' failure to provide their employees with their agreed-upon wages constitutes an unfair, unlawful and deceptive business practice.

68.    As a direct and proximate result of Defendants' conduct as alleged herein, Plaintifs and current and former employees of Defendants have been damaged as a result of Defendants' failure to provide their employees their agreed-upon wages.

69.    Under Business & Professions Code §§17200 and 17203, Plaintiffs and current and former employees of Defendants are entitled to restitution of all their unpaid agreed-upon wages wrongfully withheld by Defendants, together with interest thereon.

70.    Under Business & Professions Code §§17200 and 17203, Plaintiff and current and former employees of Defendants are also entitled to recover penalties under Labor Code §§ 203 and 226.

71.    Under Business & Professions Code §17203, Plaintiff seeks on his own behalf and on behalf of the People of the State of California an order enjoining Defendants from continuing its aforesaid unlawful practices. Injunctive relief is appropriate to avoid a multiplicity of suits for continuing violations of Business & Professions Code §§17200 *et seq*.

## **NINTH CAUSE OF ACTION**

### *(Defamation Against all Defendants)*

72.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs and incorporates the same by reference as though fully set forth herein.

73.    The August 28, 2023 group Skype messages (Ex. B) sent by Nowak to members of the Cinamaker engineering, and marketing, and operations leadership, including but not limited to a message at 12:57 AM PST which included the following; "Gary no longer works here… Please remove any credentials. I would ask nobody engages…." Six minutes later, he followed up: "Please remove Gary the Thief" was slanderous *per se* because it was a "writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civil Code §45.)

13

(Complaint for Damages and Injunctive Relief)

74. Plaintiff is informed and believes and based thereon alleges that Defendants knew that there was no truth to his statements (including their implications) and that the probable affect of those publications was to harm Plaintiff's professional reputation.

75. Plaintiff is informed and believes and based thereon alleges that Defendants republished or caused to be republished or knew or should have known that the group Skype messages (Ex. B) would be republished other individuals.

76. The group Skype messages (Ex. B) were false and did not reflect Plaintiff's ability to perform his job and ability to carry out his duties.

77. That group Skype messages (Ex. B) were not privileged because that Defendants published and republished them with personal animosity, hatred, and ill will toward Plaintiff.

78. Further, that Defendants made the above-described publications and republications with either the knowledge that they were false or without any reasonable grounds for believing that they were true.

79. As a direct and proximate result of the above-described publications and republications, Plaintiff has suffered and continues to suffer general damages to his reputation, and for humiliation and mental anguish and emotional distress of the sort normally associated with the publication of defamatory statements. Plaintiff is thereby entitled to general and compensatory damages in excess of $50,000.00 to be proven at time of trial.

80. The outrageous conduct of Defendants, as described herein, was willful and done with fraud, oppression, and malice and with a conscious disregard for Plaintiff's right to be free from defamation and with the intent, design, and purpose of injuring him. Plaintiff is entitled to punitive and exemplary damages from Defendants in an amount appropriate to punish and make an example of Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. For breach of contract damages, according to proof, together with interest thereon;

2. For a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or

(Complaint for Damages and Injunctive Relief)

fines permitted by law;

3.    For a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law;

4.    For unpaid wages, according to proof, together with interest thereon;

5.    For a wage premium of fifty dollars ($50) for the first period for which Defendants supplied Plaintiff with wage statements in violation of Labor Code §226 and one hundred dollars ($100) for each subsequent pay period for which Defendants supplied Plaintiff with wage statements in violation of Labor Code §226;

6.    For penalties under Labor Code §203 according to proof;

7.    For reimbursement of all expenses incurred in direct consequence of the discharge of his duties or of his obedience to the directions of the employer according to proof, together with interest thereon;

8.    For restitution of full amounts, plus interest at the legal rate, of all unpaid wages and wage premiums;

9.    For an order enjoining Defendants from continuing to engage in the aforementioned unlawful business practice in violation of Business & Professions Code §17200;

10.    For interest under Labor Code §§218.6 and 226;

11.    For special, general, and compensatory damages, including lost wages and benefits, and emotional distress damages, in excess of $50,000.00, according to proof;

12.    For punitive or exemplary damages, according to proof;

13.    For expenses, costs of suit and attorneys' fees; and,

14.    For such other and further relief as the Court deems just and proper.

DATED: December 8, 2023

James H. Cordes and Associates,
[ELECTRONICALLY SIGNED; CRC RULE 2.257]

/s/ *James H. Cordes*
_____
James H. Cordes, Esq..
Attorney for Plaintiff
GARY BAKER

## **DEMAND FOR JURY TRIAL**

Plaintiff GARY BAKER hereby demands a trial by jury.

DATED: December 8, 2023

James H. Cordes and Associates,
[ELECTRONICALLY SIGNED; CRC RULE 2.257]

/s/ *James H. Cordes*

James H. Cordes, Esq..
Attorney for Plaintiff
GARY BAKER

16

# EXHIBIT A

9/1/17

OFFER MEMORANDUM

DEAR GARY,

WE'RE DELIGHTED TO EXTEND THIS OFFER OF EMPLOYMENT FOR THE POSITION OF
SENIOR VICE PRESIDENT OF CORPORATE DEVELOPMENT WITH CINAMAKER INC..  SHOULD
YOU ACCEPT THIS OFFER, YOUR START DATE WILL BE 9/1/2017 FOR A MINIMUM PERIOD OF
ONE YEAR. YOU WILL REPORT TO THE COMPANY'S CEO, BENJAMIN NOWAK.

PLEASE REVIEW THIS SUMMARY OF TERMS AND CONDITIONS FOR YOUR ANTICIPATED
EMPLOYMENT WITH US.

POSITION

YOUR TITLE WILL BE SENIOR VICE PRESIDENT OF CORPORATE DEVELOPMENT. THIS IS A
FULL-TIME POSITION WHILE YOU ARE EMPLOYED AT THE COMPANY. OUTSIDE OF YOUR
PREVIOUS MENTORING OBLIGATIONS WITH THE IMPACT HUB, SANTA BARBARA, YOU WILL
NOT ENGAGE IN OTHER EMPLOYMENT OR CONTRACT WORK UNLESS AGREED UPON BY
CINAMAKER AND GARY BAKER.

TOTAL COMPENSATION

THE COMPANY WILL PAY YOU A STARTING SALARY AT THE RATE OF $200,000 PER YEAR,
$16,667 PER MONTH. INITIALLY, DISBURSEMENT WILL BE PARTIALLY REMITTED AS NET
CASH COMPENSATION (AFTER TAX WITHOLDING) OF $3350.00 EVERY TWO WEEKS AND THE
BALANCE WILL ACCRUE AS EITHER STOCK WARRANTS, OPTIONS, CASH, OR ANOTHER
INSTRUMENT TO BE MUTUALLY AGREED UPON AT A LATER TIME BY CINAMAKER AND GARY
BAKER. TAX WITHHOLDING WILL BE CALCULATED AND PAID BY THE COMPANY.

EQUITY

WHILE DISBURSEMENT WILL BE PARTIALLY REMITTED AS NET CASH COMPENSATION EVERY
TWO WEEKS, THE BALANCE WILL ACCRUE AS EITHER STOCK WARRANTS, OPTIONS, CASH,
OR ANOTHER INSTRUMENT TO BE MUTUALLY AGREED UPON AT A LATER TIME BY
CINAMAKER AND GARY BAKER. RECORDS OF ACCRUED VALUE WILL BE MAINTAINED BY
CINAMAKER AND REPORTED TO GARY BAKER ON A MONTHLY BASIS.

*Gary Baker*

_____                    _____

GARY BAKER                                         BENJAMIN NOWAK

# EXHIBIT B

6:17



**Benjamin Nowak in "...** 1:01 AM
please remove Gary the thief



**Benjamin Nowak** 12:59 AM
fuck you loser



**Benjamin Nowak in...** 12:57 AM
Gary no longer works here...
Please remove any credentials.

I would ask nobody engages...



**Benjamin Nowak** 12:42 AM
14044836688 Deposited a
new message:
"Hey, you think you have
money, you fucking psycho, y...



**Benjamin Nowak in...** 1:05 AM
Please remove Gary the Thief'



**Benjamin Nowak in...** 1:03 AM
please remove Gary the Thief



you for almost 18 months but
you're in major cognitive





